UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTMAS HOUSE USA INC., : | CIVIL ACTION NO. | : |
| : | | |
| Plaintiff, : | | |
| : | COMPLAINT | |
| v. : | | |
| : | | |
| CHRISTMAS LAND EXPERIENCE LLC, : | DEMAND FOR JURY TRIAL | |
| MICAHEL MARRA, JOLT MARKETING, : | | |
| BRANDON HAVRILLA, and REDMAX : | | |
| EVENTS, LLC, : | | |
| Defendants. : | | |

Plaintiff Christmas House USA ("Christmas House" or "Plaintiff"), by and through its attorneys Zimmerman Law Group complains against Defendants Christmas Land Experience LLC, (ChristmasLand"), Michael Marra ("Marra"), Jolt Marketing ("Jolt"), Brandon Havrilla ("Havrilla") and Redmax Events LLC ("Redmax") as follows:

## NATURE OF THE CASE

1. This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1111 et seq., and the common law of the State of New York.

## PARTIES

2. Plaintiff Christmas House is a New York State company having its office and doing business in this jurisdiction.

3. Defendant ChristmasLand is a New York State company doing business in this jurisdiction.

4. Defendant Marra is a New York State resident.

5. Defendant Jolt is a New York State company doing business in this jurisdiction that is owned by Marra.

6. Defendant Havrilla is a New York State resident.

1

7. Defendant Redmax is a New York State company doing business in this jurisdiction that is owned by Havrilla.

8. Upon information and belief, ChristmasLand is owned by Marra, Jolt, Havrilla and Redmax. Christmas Land, Marra, Jolt, Havrilla and Redmax will sometimes hereinafter be collectively referred to as "Defendants".

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because this action arises under the laws of the United States, i.e., the Lanham Act. This Court has supplemental jurisdiction over the remaining claim pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. 1391(b)(1) because all the Defendants reside in this district.

## FACTS

11. Justin Schwartz ("Schwartz") is the Chief Executive Officer of Christmas House.

12. Every year since 2020, Plaintiff Christmas House has been providing a fully immersive Christmas-themed experience for its customers from the first week of November to the second week of January using the trademark CHRISTMAS HOUSE.

13. U.S. Trademark Application Serial No. 98263878 to register Plaintiff's CHRISTMAS HOUSE trademark for an immersive Christmas-themed experience in International Class 041 is currently pending in the U.S. Patent and Trademark Office ("PTO").

14. A Petition to Make Special requesting expedited examination of the above-identified trademark application will be immediately filed in the PTO after this Complaint is filed to try and shorten the 18-month time-period it presently takes for a trademark registration to issue.

15. This year, Plaintiff will be operating its CHRISTMAS HOUSE experiences at four different locations: 1) The Oculus at The Port Authority of New York and New Jersey's World Trade

Center in Manhattan, New York; 2) Broadway Commons in Hicksville, New York; 3) Paramus Park in Paramus, New Jersey; and 4) Andorra Shopping Center in Philadelphia, Pennsylvania.

16. As in past years, Plaintiff is presently engaged in an extensive advertising and marketing campaign to publicize its CHRISTMAS HOUSE experience. This includes doing so via various online social media platforms, as well as via email, and traditional print, radio, and television media.

17. The number of paying customers visiting Plaintiff's CHRISTMAS HOUSE experience has more than doubled each successive year since first opening during the COVID-19 pandemic in 2020-2021 at a single location on Long Island, New York. Last year, more than 100,000 customers experienced Plaintiff's CHRISTMAS HOUSE.

18. Plaintiff's CHRISTMAS HOUSE immersive experience provides visitors with a 45+ minute walk through more than a dozen rooms covering tens of thousands of square feet of space, offering Christmas sights, sounds and smells in different themed rooms including a Snow Room where it is snowing, a Buddy The Elf Room, The North Pole, a Christmas at a tropical beach room, and Santa's Workshop, and also offering a gift shop.

19. The immersive CHRISTMAS HOUSE experience offered at each location is identical.

20. Since 2020, CHRISTMAS HOUSE has received wide-spread, favorable press coverage that has increased each year, which enabled Plaintiff to expand its business and offer its Christmas-themed experience in 2022-2023 to locations in New York, New Jersey, and Pennsylvania.

21. Each CHRISTMAS HOUSE experience is staged in vacant mall space that Plaintiff rents on a short-term basis.

22. In October 2021, Schwartz retained Jolt to provide marketing services for CHRISTMAS HOUSE.

23. Jolt provided marketing services for CHRISTMAS HOUSE from October 2021 to January 2022.

24. Plaintiff paid Jolt tens of thousands of dollars for the marketing services referenced above in Paragraph 23 of this Complaint.

25. In April 2022, Schwartz contacted Jolt about providing marketing services for CHRISTMAS HOUSE for the 2022-2023 Christmas season.

26. Jolt ignored Schwartz's inquiries referenced above in Paragraph 25 of this Complaint.

27. In November 2022, Schwartz discovered that Marra and Havrilla were operating a business using the trademark CHRISTMASLAND that competed with and provided the identical Christmas-themed immersive experience provided by CHRISTMAS HOUSE.

28. Comparison of Defendants' CHRISTMASLAND website at https://www.christmaslandny.com/ with Plaintiff's CHRISTMAS HOUSE website at https://christmashouseus.com/, evinces that the CHRISTMASLAND experience is confusingly similar to the CHRISTMAS HOUSE experience, i.e., Defendants have the same or similar attractions and themed rooms as Plaintiff.

29. Comparison of Defendants' CHRISTMASLAND website and its Instagram account at christmasland.ny, respectively, with Plaintiff's CHRISTMAS HOUSE website and its Instagram account at christmashouselongisland, respectively, evinces that Defendants' CHRISTMASLAND website and Instagram account are confusingly similar to Plaintiff's CHRISTMAS HOUSE website and its Instagram account, as Defendants use the same or similar verbiage as Plaintiff.

30. Copies of screenshots of Plaintiff's social media use of the CHRISTMAS HOUSE trademark is attached hereto as Exhibit 1, and copies of screenshots of Defendants' social media use of the CHRISTMASLAND trademark is attached hereto as Exhibit 2.

31. Plaintiff has separate CHRISTMAS HOUSE websites and separate Instagram accounts for each location where it operates a CHRISTMAS HOUSE experience.

32. Like Plaintiff's CHRISTMAS HOUSE, Defendants' CHRISTMASLAND is staged in vacant mall space.

33. Given the detailed knowledge Jolt acquired about Plaintiff's CHRISTMAS HOUSE business by virtue of the marketing services it provided to Plaintiff in 2021-2022, Defendants' wrongful actions in misappropriating and infringing Plaintiff's CHRISTMAS HOUSE trademark is further evinced by Marra's admission in a November 28, 2022 Newsday article that Halloween haunted houses without the scarry aspect was the inspiration for CHRISTMASLAND, which is identical to the inspiration Schwartz claimed in a November 8, 2020 Newsday article to have been the genesis for CHRISTMAS HOUSE.

34. In December 2022, Plaintiff sued Defendants and others associated with them in this Court for a variety of causes of action including theft of trade secrets, unfair competition, breach of contract and tortious interference for actions arising from the operation of the CHRISTMASLAND business.

35. During a Court hearing held in the suit referenced above in Paragraph 33 of this Complaint, Defendants claimed that they conceived of the idea for and had prepared a written business plan for CHRISTMASLAND before Jolt was ever retained to provided marketing services to CHRISTMAS HOUSE. Defendants failed to produce a copy of their business plan to Plaintiff despite being asked to do so.

36. That suit settled with Plaintiff releasing "all past and [then] present claims, demands, obligations, charges, complaints, controversies, actions, causes of action" that it then had against the Defendants. However, in doing so, Plaintiff explicitly retained and did not forego the right to assert claims against the Defendants for future actions that damage Plaintiff's CHRISTMAS HOUSE business.

37. Defendants are presently advertising and marketing for CHRISTMASLAND that will again be operating this Christmas season, i.e., 2023-2024.

38. In the relatively short period of time that Plaintiff has been advertising and marketing CHRISTMAS HOUSE for this Christmas season, it has already received inquiries from numerous potential customers inquiring whether CHRISTMASLAND is CHRISTMAS HOUSE, thus evincing confusion and giving rise to this lawsuit.

## COUNT I

**(Trademark Infringement and Unfair Competition under the Lanham Act)**

39. Plaintiff incorporates by reference all allegations in Paragraphs 1–38 of this Complaint with the same force and effect as if fully set forth herein.

40. Plaintiff is the owner of a valid and protectable CHRISTMAS HOUSE trademark.

41. Defendant infringed upon Plaintiff's CHRISTMAS HOUSE trademark by adopting and using it without permission or authorization in connection with services that are identical to those provided by Plaintiff, causing a likelihood of confusion, mistake, and deception as to whether Defendants' CHRISTMAS LAND is affiliated with, approved by, in partnership with, sponsored by, or otherwise associated with Plaintiff.

42. Defendants' adoption and use of the infringing CHRISTMASLAND trademark and offering an immersive Christmas-themed experience identical to the CHRISTMAS HOUSE

experience constitutes a false designation of origin and/or a false and misleading description of services.

43. Defendants willfully, maliciously, fraudulently, deliberately, and in bad faith infringed upon Plaintiff's valid and protectable CHRISTMAS HOUSE trademark.

44. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer damages and irreparable harm for which it is entitled to temporary, immediate, preliminary, and permanent injunctive relief to prevent further harm. Absent such relief, any damages award would be ineffectual to rectify the harm Plaintiff is suffering.

## COUNT II

### (Unjust Enrichment)

45. Plaintiff incorporates by reference all allegations in Paragraphs 1–44 of this Complaint with the same force and effect as if fully set forth herein.

46. As a result of the conduct alleged herein, Defendants have been unjustly enriched, to Plaintiff's detriment. Plaintiff therefore seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Defendants' inequitable activities.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

(a). Judgment against the Defendants;

(b). An award to Plaintiff of compensatory, direct, consequential and punitive damages against the Defendants in an amount to be determined at trial;

(c). An award to Plaintiff of pre and post-judgment interest;

(d). An award of Plaintiff's costs, disbursements and attorney's fees;

(e). An award of punitive damages to Plaintiff on account of Defendants' acts of trademark infringement;

(f). A preliminary and permanent injunction enjoining Defendants, their members, officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them from continuing to infringe; and

(g). Such further and additional relief as to the Court deems just and appropriate.

Dated: November 13, 2023

By: /s/ *Jean-Marc Zimmerman*
Jean-Marc Zimmerman
Zimmerman Law Group
153 Central Avenue
P.O. Box 2653
Westfield, NJ 07090
E: jmz@zimllp.com
T: (908) 768-6408

Attorneys for Plaintiff
Christmas House USA Inc.