UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHRISTMAS HOUSE USA INC.,

                          Plaintiff,

against,

CHRISTMASLAND EXPERIENCE LLC,
MICHAEL MARRA, JOLT MARKETING,
BRANDON HAVRILLA, and REDMAX
EVENTS, LLC,

                          Defendants.

**MEMORANDUM AND ORDER**
23-cv-8412 (LDH) (SIL)

---

LaSHANN DeARCY HALL, United States District Judge:

Christmas House USA Inc. ("Plaintiff") brings the instant action against ChristmasLand Experience LLC ("CHRISTMASLAND"), Michael Marra, Jolt Marketing, Brandon Havrilla, and Redmax Events, LLC (collectively "Defendants"), alleging trademark infringement and unfair competition under the Lanham Act.

## BACKGROUND

Plaintiff initiated this action on November 13, 2023, alleging that Defendants operate a "confusingly similar" Christmas-themed immersive experience. (Am. Compl. ¶¶ 27–28, ECF No. 10.) Every year since 2020, Plaintiff has used the "CHRISTMAS HOUSE" trademark to provide a "fully immersive Christmas-themed experience" during the holiday season. (*Id.* ¶ 12.) Last Christmas season, Plaintiff operated multiple experiences across New York, New Jersey, and Pennsylvania. (*Id.* ¶ 15.) The experiences offer a walkthrough with several different rooms themed around Christmas sights, sounds, and smells. (*Id.* ¶ 18.) Plaintiff's application to

register the "CHRISTMAS HOUSE" trademark is currently pending before the U.S. Patent and Trademark Office ("USPTO").  (*Id.* ¶ 13.)

Meanwhile, Defendants operate an "identical Christmas-themed immersive experience" using the trademark "CHRISTMASLAND."  (*See id.* ¶¶ 3, 27.)  Plaintiff learned about Defendants' competing Christmas experience in November 2022.  (*Id.*)  In December 2022, Plaintiff sued Defendants and others in this district (the "Related Action"), alleging theft of trade secrets, unfair competition, breach of contract, and tortious interference for actions arising from Defendants' use of "CHRISTMASLAND."  (*Id.* ¶ 34.)

As in this case, Plaintiff sought a temporary restraining order ("TRO") and preliminary injunction in the Related Action.  (*Christmas House USA Inc. v. ChristmasLand Experience LLP et al*, 22-cv-7691, Compl., ECF No. 1 (E.D.N.Y.).)  The Honorable Gary R. Brown, presiding over the Related Action, denied the application for injunctive relief at a hearing held on December 21, 2022.  (*Christmas House USA Inc. v. ChristmasLand Experience LLP et al*, 22-cv-7691, Hr'g Tr., ECF No. 20 ("Related Action Tr.") Dec. 21, 2022 (E.D.N.Y.).)  The next day, Judge Brown issued a Memorandum and Order incorporating his findings and again denying the request for injunctive relief.  *Christmas House USA, Inc. v. Christmasland Experience LLC*, No. 22 CV 7691 (GRB), 2022 WL 17852025 (E.D.N.Y. Dec. 22, 2022).  The parties then settled the Related Action.  (Am. Compl. ¶ 36.)

As last Christmas season approached, Plaintiff again sought injunctive relief.  On November 29, 2023—sixteen days after filing the complaint—Plaintiff filed a motion for TRO and preliminary injunction.  (Mem. L. Supp. Pl.'s App. TRO and Prelim. Inj. ("Pl.'s Mem."),

2

ECF No. 16-1.) Plaintiff asks the Court to enjoin Defendants from competing with Plaintiff by using the "CHRISTMASLAND" trademark and trade dress. (*Id.*)

## DISCUSSION

Preliminary injunctions and TROs are "extraordinary and drastic remed[ies]." *See Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007). "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Accordingly, a TRO or preliminary injunction should be granted only where the moving party establishes (1) a likelihood of success on the merits, (2) a likelihood that it will suffer irreparable harm if a preliminary injunction is not granted, (3) that the balance of hardships tips in its favor, and (4) that the public interest is not disserved by relief. *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (summary order) (outlining the standard for a preliminary injunction). Plaintiff fails all together to make this showing.

As a threshold matter, Plaintiff seeks an injunction based on alleged trademark and trade dress infringement—however, Plaintiff's complaint fails to plead a claim for trade dress infringement. (Am. Compl. ¶¶ 39–44.) The complaint nowhere mentions Plaintiff's purported trade dress, and the only causes of action are for trademark infringement and unjust enrichment. (*Id.* ¶ 39–46.) While Plaintiff has sought leave to amend the complaint to add a claim for trade dress (ECF No. 17), the Court has not yet granted Plaintiff's request, and Plaintiff may not amend its complaint to add claims through the motion for an injunction. *See Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers."). Thus, Plaintiff's

only operative causes of action for purposes of deciding the instant motion are for trademark infringement and unjust enrichment.

A plaintiff alleging trademark infringement in violation of the Lanham Act must demonstrate that (1) its trademark is valid and entitled to protection and (2) the contested use of the trademark is likely to cause confusion among consumers.  *See Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271 (2d Cir. 2021).  Yet, a review of the allegations in this case reveals that Plaintiff does not actually complain about an infringement its trademark—but rather the similarities between the Christmas experiences offered at the parties' respective establishments.  For example, Plaintiff claims that both experiences have "the same or similar attractions and themed rooms," operate in vacant mall spaces, and appear "confusingly similar" based on the parties' Internet advertisements.  (Am. Compl. ¶¶ 28–29, 32.)  None of these allegations, however, implicate the "CHRISTMAS HOUSE" trademark.  *See Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04-CIV-7028 GEL, 2007 WL 1041648, at *8 (S.D.N.Y. Apr. 5, 2007) (defining trademark as "any word, name, symbol, or device, or any combination thereof. . . used by a person . . . to identify and distinguish his or her goods") (quoting 15 U.S.C. § 1127)).  Indeed, these experiences simply do not fall under the rubric of trademarks, which includes "any word, name, symbol, or device" used to identify the attractions.  *See id.*

Even had Plaintiff properly argued for an injunction based on Defendants' alleged trademark infringement, it remains unclear whether "CHRISTMAS HOUSE" is a protectable trademark.[1]  The Lanham Act protects both registered and unregistered trademarks against

---

[1] And even if Plaintiff prevails in its application to register "CHRISTMAS HOUSE" with the USPTO, (Compl. ¶ 13), that alone does not end the infringement inquiry because a trademark's registration "shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had

infringement.  *See, e.g.*, *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 304 (S.D.N.Y. 2012).  In determining a trademark's protectability, the Court must "apprais[e] the trademark's inherent capacity to identify the source of a product and classify[ ] the trademark in one of four categories of inherent distinctiveness." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 310 (S.D.N.Y. 2000).  These categories are "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful" marks, and this order represents, from weakest to strongest, "their eligibility to trademark status and the degree of protection accorded."  *Bristol–Myers Squibb Co., v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992) (citing *Abercrombie & Fitch Co. v. Hunting World*, 537 F.2d 4, 9 (2d Cir. 1976)).

Here, the "CHRISTMAS HOUSE" experience consists of various Christmas-themed rooms, including one that depicts a living room on Christmas Eve.  (Pl.'s Mem. at 4.)  In other words, Plaintiff's experience—at least in part—consists of a Christmas-themed house.  Because the "CHRISTMAS HOUSE" trademark "tells something about [the] product," it seems descriptive, which means it is "presumptively unprotectable."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 121 (2d Cir. 2022).  In the alternative, the "CHRISTMAS HOUSE" trademark appears "suggestive" because it "seek[s] to suggest the qualities of" Plaintiff's attraction, which undoubtedly focuses on Christmas attractions.  *Id.*  Suggestive trademarks can be even weaker than descriptive trademarks if, like here, they "conjure[] up an essential or important aspect of the product."  *Id.*  Certainly, "CHRISTMAS HOUSE" suggests the essence of Plaintiff's attraction, which is the Christmas holiday.  *See* (Am. Compl. ¶ 12) (defining

---

not been registered."  *Energy Intel. Grp., Inc. v. UBS Fin. Servs., Inc.*, No. 08 CIV. 1497 (DAB), 2009 WL 1490603, at *4 (S.D.N.Y. May 22, 2009) (quoting 15 U.S.C. § 1115(a)).

Plaintiff's attraction as "a fully immersive Christmas-themed experience" offered during the Christmas season); *RiseandShine*, 41 F.4th at 112 ("Coffee's capacity to wake one up and lift one's energy, which is what the 'RISE' mark suggests, is such an important part of the perceived virtue of coffee in the eyes of the consuming public as to render this suggestive mark decidedly weak."). Thus, Plaintiff has yet to demonstrate the "CHRISTMAS HOUSE" mark is even subject to trademark protection.[2]

Even assuming "CHRISTMAS HOUSE" is a valid and protectable trademark, Plaintiff has failed to demonstrate irreparable harm required to obtain injunctive relief. A showing of irreparable harm is "'the single most important prerequisite'" for granting either a TRO or preliminary injunction. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). This element is so critical to the Court's inquiry that the Court need not reach any of the other requirements necessary for the grant of injunctive relief where irreparable harm has not been demonstrated. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66–67 (2d Cir. 2007) ("[T]he moving party must first demonstrate [irreparable harm] is likely before the other requirements for the issuance of an injunction will be considered.") (internal quotation marks and citation omitted). "To satisfy the irreparable harm requirement, [plaintiffs] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at 66.

---

[2] Seemingly, Judge Brown also cast doubt on the protectability of the "CHRISTMAS HOUSE" trademark in the Related Action. (Related Action Tr. at 60:18–19 ("But there's been no clear showing of a trademark that's been infringed."); *id.* at 41:13–17 (observing the "CHRISTMAS HOUSE" trademark is "too generic" and not "distinctive enough to remember").)

Here, Plaintiff's entire argument for irreparable harm focuses on the "actual confusion" between the two competing trademarks. (Pl.'s Mem. at 9.) In support of this argument, Plaintiff submits six declarations from individuals who claim to have confused the two competing trademarks. (ECF Nos. 16-7–16-12.) Proof of likelihood of confusion creates a rebuttable presumption of irreparable harm. *Int'l Info. Sys.*, 823 F.3d at 160; *see also Fed. Exp. Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000). One factor used to demonstrate likelihood of confusion is "actual confusion." *Int'l Info*, 823 F.3d at 160. To show actual confusion, Plaintiff must demonstrate that Defendants' use "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *The Sports Auth., Inc. v. Prime Hosp. Corp.,* 89 F.3d 955, 963 (2d Cir.1996). Evidence of actual confusion includes "mistaken orders, complaints from customers or website visitors, market surveys or other signs of uncertainty reflecting actual consumer confusion." *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 213 (S.D.N.Y. 2000). Ideally, evidence of actual confusion is shown by a "well designed consumer survey." *Rush Indus., Inc. v. Garnier LLC,* 496 F. Supp. 2d 220, 227 (E.D.N.Y. 2007). Absent a survey, anecdotal evidence that goes beyond *de minimus* can be used to show confusion. *See Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012).

Each declaration recalls the declarant coming across a "CHRISTMASLAND" advertisement, contacting Plaintiff's Chief Executive Officer Justin Schwartz to indicate the declarant "did not realize [Schwartz] was staging his Christmas-themed experience in Deer Park," and Mr. Schwartz responding that the declarant "had confused" the two attractions. (ECF Nos. 16-7–16-12.) By themselves, however, these bare declarations fail to establish actual

7

confusion, let alone irreparable harm. Importantly, the declarations do not indicate whether the declarants are "CHRISTMAS HOUSE" customers or general members of the public.[3] That omission alone proves fatal to their use in showing confusion because "courts must focus on whether prospective purchaser—and not other industry members or general members of the public—are likely to be deceived." *Bulman*, 882 F. Supp. 2d at 562; *see also Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (trademark infringement protects only against mistaken purchasing decisions and not against confusion generally).

Plaintiff's reliance on the declarations is further misplaced because the testimony contained therein is not probative of actual confusion. As noted by the Second Circuit, "[i]nquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion[.]" *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001). Ironically, the Second Circuit found that "such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." *Id.* According to the declarations, each declarant contacted Mr. Schwartz after viewing the "CHRISTMASLAND" advertisements to inquire whether he was responsible for the attraction in Deer Park, New York. (ECF Nos. 16-7–16-12.) This is exactly the sort of inquiry the Second Circuit deemed insufficient to establish actual confusion. *Nora Beverages*, 269 F.3d at 124.[4] So too does this Court.

---

[3] Although the complaint suggests the declarants are "potential customers," more importantly, the declarations themselves do not contain this same assertion. (Am. Compl. ¶ 38.)

[4] *See also Denimafia Inc. v. New Balance Athletic Shoe, Inc.*, No. 12-CIV-4112, 2014 WL 814532, at *19 (S.D.N.Y. Mar. 3, 2014) (five anecdotes insufficient to show actual confusion where "the individuals reportedly saw the [] mark on a New Balance advertisement and contacted [plaintiff] to report what they had seen and, as her friends and colleagues, to inquire whether [plaintiff] and New Balance were working on a collaboration;" yet "none of them testified that New Balance's use of the [] mark affected a purchasing decision of any kind or confused them as to the source of the products").

Accordingly, because Plaintiff has failed to establish a protectable trademark or demonstrate irreparable harm, its request for a TRO and preliminary injunction is DENIED. *See Wright v. City of New York*, No. 09-CV-2452 CBA LB, 2010 WL 167951, at *1 (E.D.N.Y. Jan. 6, 2010) ("In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction.") (citing *Local 1814. IntT Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n. Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a TRO and preliminary injunction is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
April 5, 2024

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

9