UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTMAS HOUSE USA INC.,

                          Plaintiffs,

               -against-

CHRISTMAS LAND EXPERIENCE LLC,
MICAHEL MARRA, JOLT MARKETING,
BRANDON HAVRILLA, AND REDMAX
EVENTS, LLC,

                     Defendants.

**MEMORANDUM AND ORDER**
23-CV-08412 (LDH) (SIL)

LaSHANN DeARCY HALL, United States District Judge:

Christmas House USA Inc. ("Plaintiff") brings the instant action against ChristmasLand Experience LLC ("ChristmasLand"), Michael Marra, Jolt Marketing ("Jolt"), Brandon Havrilla, and RedMax Events, LLC ("RedMax") (collectively, "Defendants"), asserting claims for trade dress infringement, trademark infringement, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 et seq, § 1125(a) and New York State common law, as well as a claim for unjust enrichment. Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the second amended complaint in its entirety.

## BACKGROUND

Plaintiff is a Long Island-based company that has provided a "fully immersive Christmas-themed experience" for its customers using the trademark "CHRISTMAS HOUSE" every holiday season since 2020. (Second Am. Compl ("SAC") ¶ 12, ECF No. 24.) The Christmas House attraction consists of several themed rooms featuring "Christmas sights, sounds, and

smells" that are staged in vacant mall spaces Plaintiff rents on a short-term basis.  (*Id*. ¶¶ 14, 16.)
Plaintiff, run by Chief Executive Officer Justin Schwartz, began operating the Christmas House
attraction at a single location in Long Island in 2020.  (*Id*. ¶¶ 2, 21.)  In 2023, having received
"wide-spread, favorable press coverage," Plaintiff expanded its attraction to four locations in
New York, New Jersey, and Pennsylvania.  (*Id*. ¶¶ 15, 18, 22.)

In October 2021, Plaintiff retained Jolt, a company owned by Michael Marra, to provide
social media marketing for the Christmas House attraction.  (*Id*. ¶ 23.)  Jolt provided these
services from October 2021 to January 2022.  (*Id*. ¶ 24.)  In connection with its work with
Plaintiff, Jolt was given administrative access to Plaintiff's business records.  (*Id*. ¶ 26.)  In April
2022, Schwartz contacted Marra to retain Jolt for the 2022-2023 holiday season, but he did not
receive a response.  (*Id*. ¶ 27.)  Schwartz later discovered, in November 2022, that Marra and
Brandon Havrilla were operating a business using the trademark "CHRISTMASLAND,"
offering a similar Christmas-themed experience in Long Island.  (*Id*. ¶ 28.)  ChristmasLand is
owned by Marra, Jolt, Havrilla, and RedMax, a company owned by Havrilla.  (*Id*. ¶¶ 7-8.)

Plaintiff alleges that there are several similarities between ChristmasLand and Christmas
House, including that both attractions are staged in vacant mall spaces and their websites feature
similar attractions and themed rooms, such as: a room with holiday themed inflatables; a room
with mirrors and Christmas lights; a Christmas-eve room; a room to toss snow balls; an optical
illusion room; and a room to take pictures in a chair with Santa Claus surrounded by presents.
(*Id*. ¶ 30, 36).  According to the complaint, the ChristmasLand website and Instagram account
uses "the same or similar verbiage" as Christmas House's website and Instagram account.  (*Id*. ¶
38).

In December 2022, Plaintiff filed a complaint against Defendants bringing claims for trade secret misappropriation, trademark infringement and unfair competition, breach of contract, and tortious interference with business relationships (the "2022 Lawsuit").  (*See id.* ¶ 31; Compl. ¶¶ 38-69, *Christmas House USA Inc. v. ChristmasLand Experience LLP et al ("Christmas House I")*, No. 22-cv-07691 (E.D.N.Y. Dec. 17, 2022) ("2022 Compl.").)  The parties executed a settlement agreement resolving Plaintiff's claims on February 8, 2023, and the complaint was dismissed with prejudice on February 15, 2023.  (SAC ¶ 32; Decl. of Brad M. Behar ("Behar Decl."), Ex. 1 ("Settlement Agreement"), ECF No. 20-6; Stip. of Dismissal, *Christmas House I*, No. 22-cv-07691 (E.D.N.Y. Feb. 15, 2023).)  As part of the settlement agreement, Plaintiff agreed to release "all past and [then] present claims . . . whether known or unknown, certain or speculative, asserted or unasserted on account of or in any way concerning disputes between the [p]arties, and specifically, anything arising from the events described in the [2022] Lawsuit." (Settlement Agreement ¶ 1.)  Plaintiff also "expressly agree[d]" that Defendants' "prior use of CHRISTMASLAND, CHRISTMAS LAND, and other variations thereof, with and without design elements, (individually and collectively the "Christmas Land Marks")," and Defendants' "prior operation of a Christmas themed venue and establishment in connection with the Christmas Land Marks did not misappropriate, infringe, or otherwise violate, in any way, [Plaintiff's] rights asserted in the [2022] Lawsuit."  (*Id.*)

After the 2022 Lawsuit, Defendants proceeded to operate their ChristmasLand attraction for the 2023-2024 holiday season.  (SAC ¶ 34.)  Plaintiff claims that the similarities between the Christmas House and ChristmasLand attractions has created confusion among the relevant public, evinced by the fact that numerous individuals contacted Plaintiff to inquire about the connection between Christmas House and ChristmasLand during the 2023-2024 holiday season.

(*Id.* ¶ 35.)  Plaintiff filed the instant action against Defendants as a result of the renewed operation.

## STANDARD OF REVIEW

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the [c]ourt must merely determine whether the complaint itself is legally sufficient, and in doing so, it is well settled that the [c]ourt must accept the factual allegations of the complaint as true."  *Id.* (internal citation omitted).

## DISCUSSION

### I.     TRADEMARK INFRINGEMENT

To state a claim for trademark infringement, Plaintiff must demonstrate that (1) its trademark is valid and entitled to protection and (2) Defendants' operations are likely to cause confusion among consumers with respect to that trademark.  *See Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271 (2d Cir. 2021).  Plaintiff's trademark infringement claim in its second amended complaint is identical to that in their amended complaint.  (*See* Am. Compl. ¶¶ 39-44, ECF No. 10; SAC ¶¶ 51-56.)  In its April 5, 2024 Memorandum and Order denying Plaintiff's motion for a temporary restraining order, the Court found that Plaintiff's allegations in its amended complaint failed to support a trademark infringement claim.  *See Christmas House USA*

4

*Inc. v. ChristmasLand Experience LLC*, No. 23-CV-8412, 2024 WL 1494687, at *2 (E.D.N.Y. Apr. 5, 2024). That is, the Court found that the allegations do not implicate the "CHRISTMAS HOUSE" trademark itself because they all pertain to the purported similarities between the Christmas House and ChristmasLand attractions and not the actual mark "CHRISTMAS HOUSE." *Id.* And as the Court found then, "these experiences simply do not fall under the rubric of trademarks, which includes 'any word, name, symbol, or device' used to identify the attractions." *See also Advanstar Commc'ns Inc. v. Dirt Motosports, Inc.*, No. 05-CV-1291, 2006 WL 2739700, at *2 (N.D.N.Y. Sept. 25, 2006) ("The emphasis and thrust of a claim of trademark infringement is in deciding whether a discrete symbol, such as a word, number or picture in fact functions as a mark.") (citation omitted). The Court further registered its skepticism about whether Plaintiff could state a claim for trademark infringement because, as a threshold matter, it remained unclear whether "CHRISTMAS HOUSE," as a descriptive mark, is a protectable trademark and Plaintiff failed to demonstrate a likelihood of confusion between Christmas House and ChristmasLand. *See Christmas House USA Inc.*, 2024 WL 1494687 at *2-4. The Court remains doubtful in this regard. Nonetheless, the failure to implicate the trademark alone defeats Plaintiff's trademark infringement claim. *See Advanstar Commc'ns Inc.*, 2006 WL 2739700 at *2.

## II.    TRADE DRESS INFRINGEMENT

In its second amended complaint, Plaintiff adds a claim that ChristmasLand's attraction infringes on Christmas House's trade dress for "an immersive Christmas-themed experience." (SAC ¶¶ 45-50.) "A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). Notably, courts exercise "particular caution" when evaluating

5

trade dress protections because "[w]hile trademarking a generic term would create a monopoly in a necessary word or phrase, granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997). Thus, to state a claim for trade dress infringement, Plaintiff must offer a "precise expression of the character and scope of the claimed trade dress" as a gating issue. Defendants argue that Plaintiff fails to state a claim for trade dress infringement because Plaintiff's trade dress is insufficiently described. (Defs.' Mot. at 20.) The Court agrees.

### A. Precise Expression of Character and Scope

In setting forth a claim for trade dress infringement, a plaintiff must "articulate the elements of their product design with specificity to be afforded trade dress protection," even where a plaintiff attaches photographs of their claimed trade dress to the complaint. *Shevy Custom Wigs, Inc. v. Aggie Wigs*, 2006 WL 3335008, at *4 (EDNY Nov. 17, 2006); *see also Eliya, Inc.*, 749 F. App'x at 47 (holding that photos of the claimed trade dress could not make up for a deficiency in the plaintiff's precise expression of its distinctive features). Here, aside from linking its website and providing photographs, Plaintiff's entire description of its trade dress is that it includes "a room with holiday themed inflatables; a room with mirrors and Christmas lights; a Christmas-eve room; a room to toss snow balls; an optical illusion room; and a room to take pictures in a chair with Santa Claus surrounded by presents." (SAC ¶ 36.) This is simply insufficient to establish a protectable trade dress, particularly because Plaintiff "does not describe with any level of specificity which features in the attached photographs [or on the website] it seeks to have the Court consider," and the Court cannot be expected to distill these elements from the photographs or website. *Texas Chicken & Burgers, LLC v. NYQ Prop., LLC*, No. 17 CV 00976, 2018 WL 2078481, at *5 (E.D.N.Y. Feb. 2, 2018) ("Beyond offering a limited

number of photographs and a link to plaintiff's website, plaintiff provides no other means of determining whether or not there are similarities in trade decor between plaintiff's and defendant's restaurants.)  This failure to offer a precise expression of the distinctive features of Christmas House defeats Plaintiff's trade dress claim.

### B. Functionality

Even if Plaintiff's description of its alleged trade dress was sufficient, Defendants further argue that Plaintiff fails to sufficiently plead the elements necessary to sustain a trade dress infringement claim.  (Defs.' Mot. at 19-21.)  Specifically, Defendants argue that, as pleaded, Plaintiff only complains about functional aspects of Christmas House that cannot be subject to trade dress protection.  Again, the Court agrees.

To sustain a trade dress infringement claim, Plaintiff must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's goods and the defendant's goods.  *See APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *1 (2d Cir. Jan. 9, 2024) (citing *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018)).  It is a "well-established rule that trade dress protection may not be claimed for product features that are functional."  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).  A "trade dress is functional, and thus not protectable, when it is essential to the use or purpose of the article," or "when certain features of the design are essential to effective competition in a particular market."  *Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 Fed. App'x. 615, 620 (2d Cir. 2008).  "[T]he absence of alternative constructions performing the same function" renders a feature functional.  *Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1148 (2d Cir. 1987).  Moreover, there is a "statutory presumption that features are deemed functional until

proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001).

      Here, Plaintiff's purportedly protected features like a "room to take pictures with Santa" or "a room with holiday themed inflatables" are essential to any Christmas-themed attraction, including those at a typical mall or department store. Plaintiff's alleged trade dress is entirely composed of such commonly used and generic elements, like "Santa" and "Christmas lights," that it cannot be found to be protectable. *See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("[T]he fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea."); *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 595 (E.D.N.Y. 2017). Because Plaintiff's alleged trade dress includes only functional elements of any Christmas-themed attraction, Plaintiff fails to state a claim for trade dress infringement. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).

### C. Secondary Meaning

      "A court need not engage in the [] secondary meaning analysis if the party claiming trade dress infringement cannot prove non-functionality of the dress." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 597 (E.D.N.Y. 2017) (quoting *Metrokane, Inc. v. The Wine Enthusiast*, 160 F.Supp.2d 633, 637 (S.D.N.Y. 2001)) (internal alterations and quotations omitted). In fact, the ultimate determination of whether a mark has acquired a secondary meaning can be a fact-intensive one not typically suited for determination on a motion to dismiss. *Id.* However, a court may make this determination at this stage when the allegations make clear that Plaintiff cannot demonstrate that a mark has acquired a secondary meaning. *See id.* The Court finds that

Plaintiff's alleged trade dress is also unprotectable because Plaintiff fails to establish that Christmas House acquired the requisite secondary meaning prior to ChristmasLand's operation of its Christmas-themed attraction.

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851, n.11 (1982)).  In determining whether a trade dress has acquired secondary meaning, courts weigh six non-exclusive factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012); *Bristol-Myers Squibb Co.*, 973 F.2d 1033, 1041 (2d Cir. 1992).  Plaintiff argues that it has sufficiently alleged that the rise in sales, the favorable media coverage of the Christmas House attractions, and the expansion into new locations over the past four years support a finding that Christmas House acquired a secondary meaning at the time of Defendants' alleged infringement.  (Pl.'s Opp. at 7.)  The Court disagrees.

Plaintiff makes no allegations about consumer studies linking the Christmas House mark to the source, nor does Plaintiff make any allegations regarding attempts to plagiarize the mark aside from its allegations against Defendants—which are not sufficient to weigh in favor of secondary meaning.  *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 600 (E.D.N.Y. 2017) (alleging only violations by the defendant "militates against an inference" of a secondary meaning).  As such, Plaintiff relies on allegations related to advertising expenditures, media

coverage, sales success, and the length and exclusivity of use to demonstrate secondary meaning. These allegations are insufficient.

With respect to the length and exclusivity of use, courts typically find that continuous exclusive use of a mark for five years supports a finding of a secondary meaning, although there is no set timeframe that a plaintiff must plead to suggest a secondary meaning. *See* 15 U.S.C.A. § 1052; *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000) (holding that a five-year period of continuous use of a trade dress provides evidence of a secondary meaning). Plaintiff's two-year use of their trade dress prior to Defendants' establishment of ChristmasLand, or even their four-year use up to this point, hardly reaches this benchmark. While this alone does not mean that Plaintiff cannot allege secondary meaning, it does not weigh in favor of such a finding.

Plaintiff's allegations with respect to advertising expenses also do not weigh in favor of finding secondary meaning. Plaintiff alleges, without further detail, that it paid Jolt "tens of thousands of dollars" to provide social media marketing services. (SAC ¶¶ 23-24.) However, "[P]laintiff's allegation about its substantial investment" in advertising "is nothing more than a conclusory statement devoid of factual content" that "is insufficient to support an inference" of a secondary meaning. *See Bubble Genius LLC*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017).

With respect to unsolicited media coverage, Plaintiff makes conclusory allegations that Christmas House received "wide-spread, favorable press coverage" since 2020, but fails to provide any further allegations that would support an inference that this media coverage created a secondary meaning. *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) (holding that allegations that a product "has been featured in numerous periodicals and has received excellent consumer reviews, and [the plaintiff] expended

substantial amounts of money to advertise [its product] in various periodicals" was not sufficient to support a finding of sufficient unsolicited media coverage to support a finding of secondary meaning). Again, without more, this allegation does not weigh in favor of a finding of a secondary meaning.

Lastly, with respect to sales success, Plaintiff alleges that the number of customers attending the Christmas House attraction every year "has more than doubled each successive year since first opening" and it has allowed the attraction to grow into different locations. (SAC ¶ 21.) While these allegations may sufficiently demonstrate sales success in favor of a secondary meaning, this factor alone does not outweigh the others with respect to a finding of secondary meaning. *See Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-CV-3599, 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012) (holding that, even where a plaintiff was able to demonstrate a sufficient length of time and a growth in sales, the plaintiff "fail[ed] to allege facts relating to Plaintiff's advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize," and thus failed to adequately allege a secondary meaning).

For the foregoing reasons, Plaintiff's trade dress infringement claim must be dismissed.[1]

## III.    UNFAIR COMPETITION & UNJUST ENRICHMENT

Because Plaintiff fails to plead a trademark or trade dress infringement claim, its unfair competition and unjust enrichment claims must also fail. *See Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) (where a plaintiff fails to state a claim for trade dress or trademark infringement, the plaintiff's allegations of wrongdoing "describe

---

[1] Neither the Defendants nor Plaintiff address the likelihood of confusion element in their motion to dismiss briefing. Because Plaintiff fails to sufficiently describe their trade dress and fails to sufficiently plead non-functionality or that the Christmas House trade dress acquired secondary meaning, the Court need not engage in this analysis either.

nothing more than fair competition in the market . . . an inadequate basis for a claim of unjust enrichment."); *Bubble Genius LLC*, 239 F. Supp. 3d at 601.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's second amended complaint is DISMISSED.  The Clerk of Court is respectfully directed to enter judgment and close the case

SO ORDERED.

Dated: Brooklyn, New York

September 30, 2025

/s/ LDH_____
LaSHANN DeARCY HALL
United States District Judge